I feel myself compelled to dissent from the opinion of a majority of the Court in this case. The marriage agreement made between John H. Lee and Elizabeth his wife, on the 5th day of December 1825, not having been recorded, was, according to the decision of this Court in the case ofThomas v. Gaines, 1 Gratt. 347, void as to his creditors. Does it derive any validity as against those creditors, from the decree of the Richmond Chancery court of the 4th of February 1826? Or does that decree, propriovigore, make the claims of those who claim under the agreement, paramount to the claims of the said creditors? I think not. It is unnecessary to enquire in this case what would be the effect on the claims of the husband's creditors, of a decree in an adversary suit, brought by the wife against her husband to enforce the execution of an ante-nuptial agreement between them. Nor whether a deed executed in pursuance of such a decree, or of a decree for a settlement, rendered in a suit in which the wife's equity could properly be administered, would be good against the husband's creditors, without being recorded. There would be much room for contending in such a case, that both the letter and the spirit of the statute required the recordation of the deed. On that question, however, I express no opinion. It is enough to say that this is not such a case. The suit in which the decree of the 4th of February 1826 was rendered was not an adversary suit, as between husband and wife, if adversary as to any person. It was brought by husband and wife in about a month after their marriage, to recover of her father's executor her portion of *Page 325 
his estate, real and personal. It was not brought to enforce the execution of the ante-nuptial agreement. There had been no refusal and was no unwillingness on the part of the husband to execute it. Suppose it had been executed by the execution of a deed conveying the property to a trustee for the purposes of the I agreement. Would not the recordation of that deed have been necessary to give it effect against the husband's creditors? The agreement was referred to in the bill because it was a binding agreement between the parties, and the husband was willing the property should be received and held subject to the uses therein declared. Whether the suit would have been brought if there had been no agreement does not positively appear. The nature of the wife's property and the provisions of her father's will might have rendered such suit necessary. It seems that the portions of the older children had been assigned and paid to them under the order of the Chancery court. However this may be, the executor did not refuse to assign and pay the wife's portion to the husband in this case for the purpose of enforcing the execution of the agreement, or a settlement by him on her. The bill states that the executor doubted whether he could properly deliver to the complainant the share of the wife, because he had been informed of the ante-nuptial agreement. The agreement is then exhibited, and the complainants pray that the share of the wife may be assigned and paid to them. The executor probably doubted whether the husband could give him a valid discharge under the agreement, and in his answer stated that he was willing and anxious to surrender her portion of her father's estate to whomsoever the Court might appoint to receive the same and give him a legal discharge. And the Court decreed that the plaintiffs hold the real estate and slaves allotted to them in right of the female plaintiff, subject to the use and stipulations of the *Page 326 
marriage agreement, I think this decree was merely a recognition of the agreement, and cannot operate as notice to creditors and purchasers, or dispense with the necessity of recording the agreement according to the requisition of the statute. I cannot see how such a recognition can have any greater effect on the rights of creditors than a deed executed by the husband in pursuance of the agreement, which it will be admitted would not affect those rights without being recorded. It seems to me that it would be strange indeed if a decree for the plaintiffs in a suit brought to recover property on an agreement binding on the parties, but not as to creditors because not recorded, should have the effect of setting up the unrecorded agreement against the creditors. This would be against the policy of the statutes of registration, the overruling influence of which is so great, that, as was decided by this Court inNewman v. Chapman, 2 Rand. 93, the pendency of a suit to set up an unrecorded deed which is required by law to be recorded, will not affect a subsequent purchaser for valuable consideration without actual notice.
The agreement then being void as to creditors, notwithstanding the decree of the 4th of February 1826, is it renderd valid as to them by the decree of June 1833? Or does that decree proprio vigore bind the creditors of Lee? I think not. The agreement and decree of 1826 being void as to the creditors of Lee at the time of his death, that event rendered it impossible to set up the agreement against those creditors. Their rights to the legal administration of Lee's estate, of which the trust subject was part as to them, became then fixed, and could not be changed by the subsequent recordation of the deed or recovery of the subject by the wife. The agreement being valid inter partes, the trust subject did not devolve on the executor of Lee, or if it did, he held it as trustee in equity *Page 327 
for the benefit of the wife. He could not resist her suit against him for it, and therefore he was properly decreed to render it to her by the decree of 1833. But that decree declares the deed valid as between the parties thereto, and not as to creditors; and the Court which pronounced it did not intend "to intimate any opinion as to the effect of the marriage contract as to the creditors of Lee," as appears by a copy of the opinion contained in the record. Supposing the agreement then to be void as to creditors, notwithstanding the decrees of 1826 and 1833, the wife held the property after its recovery by her as executrix de son tort as to her husband's creditors, and those creditors had a right to subject it to the payment of their claims after exhausting the assets in the hands of the legal executor. Chamberlayne v. Temple, 2 Rand. 384; Boyd v. Stainback, 5 Munf. 305; andShields v. Anderson, 3 Leigh 729. Kennedy is a creditor of Lee, and he established his claim by judgment against the executor, which is at least prima facie
evidence against the executrix de son tort. The assets in the hands of the rightful executor have been exhausted. The act of limitations interposes no bar in favour of the executrix de son tort, and I therefore think that the subject is liable for the payment of the appellee's claim, and that the decree in his favour should be affirmed.